# 99 DTA 154

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**
**PANEL IV**

ANTONIO SANTIAGO RODRIGUEZ, SUSTITUIDO POR SU SUCESION COMPUESTA POR DON ELADIO SANTIAGO ROSARIO, CARMEN MARIA, JOSE A., CONOCIDO POR LUIS, ANA ROSA Y ALBERTO SANTIAGO RODRIGUEZ Y LA FUNDACION SIDA DE PUERTO RICO
Demandantes-Apelados

v.

BRAULIO AGOSTO MOTORS, INC.
Demandada-Apelante

GOMEZ HERMANOS, INC., TOYOTA DE PUERTO RICO CORP.
Demandada

Núm. KLAN-98-01262

San Juan, Puerto Rico, a 11 de mayo de 1999

Panel integrado por su Presidente, Juez Rossy García,
y los Jueces González Rivera y Ortiz Carrión

Rossy García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso instado en el caso de epígrafe interesa la revisión y revocación de una sentencia emitida sumariamente por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de San Juan (Awilda Irizarry, J. ). Mediante ésta, dicho foro, luego de dejar sin efecto una orden previa denegando una moción de sentencia sumaria promovida por la demandante, ■ retomó la referida moción a solicitud de los demandantes y, contrario a lo previamente resuelto, la acogió con aprobación para declarar *'Con Lugar'* la demanda instada por dicha parte. ■ Condenó en ésta a los demandados a reembolsar el dinero pagado por el Sr. Santiago Rodríguez al adquirir un automóvil *'nuevo'* del co-demandado Braulio Agosto Motors, Inc. Al así dictaminar resolvió, conforme a las alegaciones de los demandantes, que el referido vehículo había recibido un impacto previo a la adquisición del mismo por el Sr. Santiago, lo que no le fue informado. ■

Al así dictaminar, el foro de instancia resolvió sumariamente, como cuestión de hecho, que *"Braulio Agosto Motors, Inc. recibió el vehículo de manos de Gómez Hermanos, Inc. en perfectas condiciones";* que *"dicho vehículo estuvo bajo la posesión de éste durante cinco (5) meses antes de vendérselo al demandante";* que el informe preparado por el Sr. José A. Ramos, instructor técnico de Toyota de Puerto Rico, demostró *"sin lugar a dudas que el vehículo había sido chocado";* y que *"el demandante nunca ha chocado su vehículo desde que lo compró".* ■ A tenor, desmereció, en trámite sumario y sin la celebración de una vista en su fondo, la declaración del Sr. Braulio Agosto Vega (Sr. Agosto), la que fue suscrita bajo juramento para ser sometida en apoyo a la moción en solicitud de sentencia sumaria. En la referida declaración jurada consignó éste, que el vehículo fue vendido y entregado al señor Santiago Rodríguez en las mismas condiciones en que Braulio Agosto Motors, Inc. lo recibió de Gómez Hermanos, Inc.; que durante el tiempo que dicho vehículo estuvo en el inventario de Braulio Agosto Motors, Inc. nunca fue chocado, ni impactado, ni en forma alguna alterado; así como que al mismo no se le sustituyeron o cambiaron piezas de su carrocería. ■ Al juzgar sumariamente, además, que *"esta afirmación no es suficiente para rebatir la prueba del demandante",* y que *"el vehículo pudo haber sido chocado y arreglado sin que él [, el Sr. Agosto] tuviera conocimiento",* el tribunal *a quo* concluyó, como cuestión de derecho, que *"[e]n el caso de autos, se cumple con todos los requisitos establecidos por el Código Civil y la jurisprudencia [...] para que un vendedor venga obligado a sanear los vicios ocultos de la cosa vendida...".* Así, *"conden[ó a Braulio Agosto Motors, Inc.] a devolver a la parte demandante la suma de dinero pagada por el vehículo de motor ($13,750.00), con sus intereses a razón del 9.5% anual desde la fecha de la radicación [sic] de la demanda hasta la fecha de su pago... [así como] las costas de todas las partes en este procedimiento, y a pagar a la parte demandante la suma de $2,000.00 por concepto de honorarios de abogado, ya que existió temeridad extrema durante el procedimiento".* ■

Inconforme con el dictamen así emitido, acude ante nos en tiempo oportuno la co-demandada-apelante, Braulio Agosto Motors, Inc., con el recurso que nos ocupa. En el mismo imputa al Tribunal de Instancia la comisión de cuatro errores entre los que invoca, como fundamento de revocación, que dicho foro incidió *"al aplicar criterios de credibilidad sin haber recibido prueba testifical".* ■

Examinado como fue el recurso y considerado tal fundamento de revocación invocado por la apelante a la luz de lo consignado en la sentencia objeto de revisión, de la cual surge que *"[e]l caso de epígrafe fue llamado para vista en su fondo el día 21 de agosto de 1998"*, ▇ por iniciativa propia ordenamos a la Secretaría del Tribunal de Primera Instancia, Sala Superior de San Juan, que se elevara copia de la minuta correspondiente al día de referencia. Cumplido nuestro requerimiento y examinada la misma, surge del texto de ésta que la naturaleza de la vista celebrada en dicha ocasión era una de carácter no evidenciario sobre conferencia con antelación a juicio, así como que la misma era *"para discutir el informe de pre-trial"*. Se consignó en la misma, además, que el tribunal de instancia dejó sin efecto su orden previa de 17 de febrero de 1998, para reconsiderar la Moción de Sentencia Sumaria y resolver la misma por escrito. ▇

En atención a la incongruencia entre lo consignado en la sentencia y el contenido de la minuta, lo que es determinante para la correcta consideración y disposición del actual recurso, emitimos orden dirigida a las partes para que se expresaran en torno al contenido y alcance de la referida minuta. ▇ Basta aquí con señalar que cuando se dispone de un caso mediante el mecanismo procesal de sentencia sumaria, los criterios de revisión de tal determinación deben regirse por lo dispuesto en la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. A tenor, el juzgador no puede entrar a dirimir cuestiones de credibilidad. De otra parte, cuando se revisa la decisión del juzgador de hechos, al cual las partes le han sometido la final resolución del caso ante su consideración a tenor de la prueba documental por éstas aportada, su determinación, así como los criterios de revisión, están controlados por las disposiciones de la Regla 10 de las de Evidencia, 32 L.P.R.A. Ap. IV, o sea, que *"la decisión del juzgador deberá producirse de acuerdo a la preponderancia de las pruebas a base de criterios de credibilidad"*. Regla 10 (F).

En atención a nuestro requerimiento, y a solicitud de los aquí apelantes, el foro de instancia aclaró tal inconsistencia reiterándose en que no procede ninguna corrección a la minuta. Así consignó en la orden que emitió al efecto, la que fue notificada el 7 de abril de 1999, que *"luego de examinar [el] expediente de autos, [y] la minuta que se solicita [que se] corrija, no procede ninguna corrección, ya que está correcta"*. ▇ En su virtud, claro resulta que la vista del 21 de agosto no fue una de carácter evidenciario, y que la sentencia emitida por el foro apelado fue, ciertamente, dictada sumariamente. Así la referencia que hizo dicho foro en la sentencia apelada a los efectos de que el caso *"fue llamado para vista en su fondo"*, se trata de un error de forma susceptible de corrección en cualquier momento. Regla 49.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Aclarado el referido extremo a satisfacción de este foro, y luego de un análisis de la totalidad de los documentos que se hicieron formar parte del expediente, así como del alegato en oposición presentado por la parte apelada, resolvemos que incidió el foro de instancia al dirimir sumariamente la controversia planteada ante su consideración por lo que, en consecuencia, resulta procedente emitir sentencia revocatoria de la apelada.

**I**

Los hechos que suscitaron la presentación de la demanda que culminó con el dictamen cuyos méritos revisamos se remontan al mes de abril de 1994. Según surge de las alegaciones incluidas en dicho escrito, el 11 de abril de 1994 el Sr. Antonio Santiago Rodríguez adquirió de Braulio Agosto Motors, Inc. (Braulio Agosto Motors), por la suma de $13,750.00, un vehículo de motor marca Toyota Corolla, modelo del 1994, ▇ el cual había escogido dos días antes. Conforme a lo por él declarado en ocasión de la deposición que se le tomara por los demandados, relató que en esa ocasión *"yo miré el carro... vuelta redonda, como dice uno. Y entonces lo vi muy bien. Cuadraíto, bien pin... o sea, nuevo. Se supone que era nuevo... Le abrí la puerta, me monté, prendí el carro, muy bien, el aire... funcionando bien, el radio, me bajé, abrí el bonete del carro, miré el motor y para mí estaba todo perfecto. Porque (risa), como yo no soy perito en mecánica ni hojalatería, pues, lo encontré perfecto"*. ▇

De conformidad con el manual de garantía que le fue entregado al momento de la compra del vehículo, y de las indicaciones que al respecto le hiciera el vendedor del referido concesionario de automóviles Toyota, el Sr.

Santiago llevó su auto para la revisión de las 3,000 millas a Braulio Agosto Motors, donde le prestaron dicho servicio el 4 de agosto de 1994. De igual forma procedió el subsiguiente 26 de octubre, cuando el automóvil alcanzó un millaje de apróximadamente 6,000 millas, en cuya ocasión le notificó al empleado que lo atendió que, además, el acondicionador de aire no estaba enfriando. En ese momento, el Sr. Santiago fue informado por un empleado de Braulio Agosto Motors que dicho trabajo lo realizaría Gómez Hermanos, Inc. de Río Piedras (Gómez Hermanos), para ese entonces distribuidor exclusivo para Puerto Rico de los vehículos Toyota, al que debía llevar su vehículo. A tenor, ese mismo día el Sr. Santiago se trasladó a las facilidades de Gómez Hermanos, donde dejó el auto para que se le efectuaran las referidas labores.

Al día siguiente, 27 de octubre de 1994, el Sr. Santiago se personó al taller de Gómez Hermanos para recoger el auto. Al indagar sobre si se había corregido el defecto reportado en el acondicionador de aire, un empleado de dicha corporación le informó que a su vehículo no se le honraría la garantía, ya que el mismo había sido chocado de frente y el *"bumper"* y bonete no eran los originales de fábrica". ■

Con este trasfondo, y alegando que *"el demandante nunca ha chocado su vehículo desde que lo compró y que de ser cierto que el mismo era chocado, se trata de vicios ocultos, ya que al adquirir el mismo se le informó que era nuevo"*. ■ con fecha de 7 de diciembre de 1994 el Sr. Santiago instó la demanda de epígrafe. ■ En la misma, y luego de hacer referencia a los hechos básicos hasta aquí reseñados en cuanto a las circunstancias particulares que culminaron con la negativa por parte de Gómez Hermanos de honrarle la garantía ofrecida por el fabricante a su vehículo, el Sr. Santiago alegó, además, que debido a que *"no tiene garantía"*, tuvo que reparar el acondicionador de aire con Artic-Kar y pagar la suma de $75.00, la cual debía serle reembolsada por los demandados; *"que como consecuencia del engaño de[l] que ha[bía] sido víctima"* había sufrido angustias mentales y daños que valoraba en $15,000.00; y que toda vez que había notificado a Braulio Agosto Motors de los vicios ocultos descubiertos en su vehículo de motor, quien le contestó *"negando el hecho de que el referido vehículo fuera chocado con anterioridad a ser vendido al demandante"*, se traía como co-demandados a Toyota Motors, Inc., fabricante de los autos Toyota, y a Gómez Hermanos, distribuidor de los mismos, *"por entender que de haber ocurrido los vicios ocultos alegados con anterioridad a la fecha en que el co-demandado Braulio Agosto Motors, Inc. se lo vendió al demandante, dicho vehículo estuvo en el exclusivo control de dichas partes y, por lo tanto, deben éstos responder por los vicios y daños reclamados"*. ■ A tenor, solicitó como remedio que se condenara a los demandados solidariamente a reembolsarle *"la suma de $13,750.00 pagados, y las sumas pagadas por el demandante con intereses, la suma de $15,000.00 por concepto de daños y suma de $5,000.00 para costas y honorarios de abogado"*. ■

Emplazado como fue el co-demandado Braulio Agosto Motors, éste contestó la demanda el 20 de enero de 1995. Según se desprende de la misma, dicha parte aceptó la existencia del contrato de compraventa entre éste y el demandante Sr. Santiago, así como que el auto objeto de dicha transacción era nuevo, negando, *"específicamente, que fuera chocado o que adoleciera de algún vicio o defecto oculto antes de su entrega al demandante"*. Como defensa afirmativa adujo, entre otras, que *"la causa de acción que pretende ejercitar la parte demandante está prescrita"*. ■ Alegó, además, que *"[e]l vehículo objeto de esta acción se le vendió al demandante en las mismas condiciones en que fue recibido de su distribuidor, y durante el corto lapso de tiempo que estuvo en poder de la co-demandada compareciente, nunca fue objeto de accidente alguno"*. ■

Por su parte fue la contención de la co-demandada Gómez Hermanos, Inc. que el automóvil a que se refiere este caso fue entregado a Braulio Agosto Motors, Inc., el día 12 de noviembre de 1993 en el propio muelle donde arribó dicha unidad con varias otras, quien lo recibió de conformidad sin indicar que dicho vehículo tuviera desperfecto o choque de clase alguno. Alegó así que de haber sufrido dicho vehículo un accidente como alega el demandante, el mismo aconteció mientras estuvo en posesión del co-demandado Braulio Agosto o del propio demandante. A tales efectos instó, además, demanda contra coparte contra Braulio Agosto. ■

Toyota de Puerto Rico, también parte demandada, alegó en lo pertinente, entre otros extremos, que nunca tuvo posesión ni control del vehículo en cuestión antes de ser adquirido por el demandante. ■

Puesto en marcha el proceso judicial, y trabada como quedó la controversia, las partes iniciaron el correspondiente descubrimiento de prueba, el que incluyó la toma de una deposición al demandante, Sr. Santiago. Con posterioridad, dicha parte falleció, por lo que fue sustituido en el litigio por él instado por los miembros de su sucesión testamentaria. Asimismo se tomaron deposiciones a los señores Miguel A. Vega Ocasio y Federico Correa León, empleados de Gómez Hermanos, quienes se desempeñaban, respectivamente, como técnico de refrigeración y asesor de servicio al momento en que se determinó que el automóvil del Sr. Santiago había sido impactado, lo que constituyó base para negarle la garantía del fabricante en relación con el alegado desperfecto en el aire acondicionado según ya indicado.

Así las cosas, el 29 de enero de 1996 la parte demandante presentó ante la consideración del tribunal *a quo* una moción de sentencia sumaria, la que acompañó de los siguientes documentos: copia de la transcripción de las deposiciones tomadas al entonces demandante Sr. Santiago y a los señores Vega Ocasio y Correa León; la hoja de servicio de 27 de octubre de 1994, entregada por Gómez Hermanos al Sr. Santiago donde se le certifica que el vehículo fue chocado, y que por tal razón el *"auto está fuera de garantía";* la documentación pertinente relativa al embarque del controvertido vehículo desde Japón a San Juan, la que entre otras, acreditaba la fecha de entrada del mismo a nuestra jurisdicción; la orden de compra del vehículo a Braulio Agosto Motors; la carta de reclamación dirigida a dicha última parte por la representación legal del Sr. Santiago; ■ la contestación a la misma suscrita por la contraparte del co-demandado Braulio Agosto Motors; el informe rendido por el Sr. José A. Ramos, Instructor Técnico de Toyota, acreditando la condición del automóvil como que el mismo había sido impactado y reparado; y el registro de la garantía del auto a favor del Sr. Santiago. ■

Dicha moción de sentencia sumaria fue debidamente replicada, siendo la contención de la aquí apelante Braulio Agosto Vega, Inc., que el vehículo que es aquí objeto de controversia fue vendido y entregado al Sr. Santiago Rodríguez en las mismas condiciones en que Braulio Agosto Motors, Inc. lo recibió de Gómez Hermanos, Inc., así como que durante el tiempo en que dicho vehículo estuvo en el inventario de Braulio Agosto Motors, Inc. nunca fue chocado, ni impactado, ni en forma alguna alterado, ni se le sustituyeron o cambiaron piezas de su carrocería.

Considerada como fue dicha moción, así como las correspondientes réplicas en oposición presentadas por las co-demandadas, el tribunal de instancia denegó la petición del demandante de disponer del caso por la vía sumaria por entender que existían controversias materiales que requerían ser adjudicadas en un juicio plenario y ordenó la continuación de los procedimientos.

Inconformes con el referido dictamen los demandantes recurrieron ante este foro mediante una petición de *certiorari.* Considerado como fue dicho recurso, el 23 de octubre de 1996 un panel hermano de este foro revisor emitió sentencia confirmando la resolución recurrida. Razonó, como fundamento para confirmar la decisión del tribunal de instancia denegando la moción de sentencia sumaria, que *"en esta etapa del procedimiento, [dicho foro] no puede descansar tan sólo en las alegaciones y el testimonio del propio demandante para concluir que el alegado vicio es preexistente a la venta".* ■

Reanudado el curso procesal del caso en instancia, y en atención al señalamiento de una conferencia con antelación a juicio, las representaciones legales de las partes se reunieron para confeccionar el correspondiente informe preliminar entre abogados. Según surge de autos, se consignaron allí las respectivas teorías, se definieron las controversias y se relacionó la prueba testifical y documental que éstas habrían de aportar en apoyo a sus respectivas contenciones en ocasión de la vista en su fondo. Significativo nos resulta que en el referido informe las partes coincidieron en que entre las controversias a ser dilucidadas por el juzgador de hechos, una era si el defecto

alegado en el automóvil del Sr. Santiago, a saber, el impacto que vició de nulidad la garantía, era preexistente a la compraventa realizada entre éste y Braulio Agosto Motors. A los fines de la dilucidación de esta controversia los demandantes anunciaron que habrían de utilizar los testigos allí mencionados o, en su defecto, las deposiciones tomádales a los mismos durante el período de descubrimiento de prueba, a lo que ninguna objeción levantaron las demandadas. Por otro lado, la co-demandada Braulio Agosto Motors, Inc. anunció como testigo al Sr. Agosto. Dicho informe fue presentado ante el tribunal apelado el 22 de octubre de 1997.

En ocasión del señalamiento de la conferencia con antelación a juicio que dio base al referido informe preliminar, el foro de instancia instruyó a las partes a los efectos de que procedieran a reunirse para estipular la prueba documental, lo que en efecto hicieron el subsiguiente 5 de noviembre. Así, surge del escrito producido a tales efectos que todas las partes acordaron estipular, además de los documentos que fueron sometidos ante el juzgador al presentarse la moción de sentencia sumaria de la demandante, aquellos atinentes a la defunción del Sr. Santiago.

Con este trasfondo procedieron entonces los demandantes a presentar una segunda moción de sentencia sumaria con fecha del 4 de diciembre, la cual fue acompañada con toda la documentación que había sido estipulada por las partes en su reunión del 5 de noviembre, y a la cual se ha hecho referencia previamente. Por su parte, la co-demandada Braulio Agosto Motors, al observar que de dicha moción y sus anejos no surgía prueba adicional alguna distinta a la que había sometido la demandante con su escrito previo solicitando igual remedio, se opuso a la misma mediante moción con la cual acompañó una declaración jurada del Sr. Agosto, la que suscribió en su calidad de *"presidente y principal ejecutivo de Braulio Agosto Motors, Inc."*. En la referida declaración jurada éste afirmó, *inter alia*, que el vehículo objeto de controversia:

*"fue vendido y entregado al señor Santiago Rodríguez en las mismas condiciones en que Braulio Agosto Motors, Inc. lo recibió de Gómez Hermanos, Inc. y durante el tiempo que dicho vehículo estuvo en el inventario de Braulio Agosto Motor Inc. nunca fue chocado, ni impactado, ni en forma alguna alterado, ni se le sustituyeron o cambiaron piezas de su carrocería,"*

así como que:

*"[a]ntes de la entrega del vehículo a su comprador, como es costumbre en nuestra empresa, se le permitió al señor Santiago Rodríguez que llevara a cabo un examen de su condición y me consta que dicho señor le hizo una inspección y prueba bien cuidadosa antes de llevarse su vehículo sin que entonces presentara ninguna queja por algún motivo. Estoy informado de que el propio señor Santiago Rodríguez admitió haber examinado cuidadosamente su vehículo antes de llevárselo. Así surge de la página 8 de una deposición tomada al señor Santiago Rodríguez el 6 de febrero de 1995."* ▉

Considerada como fue esta segunda moción de sentencia sumaria a la luz de la oposición formulada y la prueba documental complementaria presentada, la misma fue denegada. Con este trasfondo el 21 de agosto de 1998, señalamiento ordenado para la celebración de una conferencia con antelación a juicio, ello según se desprende de la Minuta correspondiente a la misma, comparecieron las partes asistidas por sus respectivos abogados, excepción hecha de la representación legal de Toyota de Puerto Rico, quien no estuvo presente. Según surge de la Minuta, en dicha vista aconteció lo siguiente: ▉

*"Se informa al Tribunal que al fallecer el demandante se solicitó que se citará a Braulio Agosto para que sea testigo ya que hizo una declaración jurada contradiciendo al demandante.*

*La Sucesión de la parte demandante se compone de su padre Eladio Santiago y sus hermanos Luis Santiago, Carmen Santiago y Roberto Santiago; y la Fundación Sida de P.R.*

*El Tribunal argumenta que la vista de hoy era para discutir el informe de pre-trial".*

*Se deja sin efecto la orden del 17 de febrero de 1998 y se reconsiderará la Moción de Sentencia Sumaria. El Tribunal resolverá por escrito.*

*El Tribunal autoriza a la parte demandante disponer del vehículo y notificar a las partes.*

*Los procedimientos fueron grabados en el rollo #10 (7824-7962)."*

Fue a la luz de estos antecedentes que el foro de instancia emitió el dictamen aquí recurrido, resolviendo sumariamente el caso a favor de los demandantes. Al así dictaminar, y luego de consignar los hechos básicos hasta aquí relacionados, el foro de instancia dirimió la controversia atinente a las condiciones en que se encontraba el vehículo que le fue vendido al Sr. Santiago y, en particular, si el mismo fue chocado previo a la venta o luego de ésta, ya en poder del demandante, a base de los documentos sometidos por las partes con sus escritos relacionados con la moción de sentencia sumaria. Determinó así, como cuestión de hecho, que *"el demandante nunca ha chocado su vehículo desde que lo compró y que de ser cierto que el mismo era chocado, se trata de vicios ocultos, ya que al adquirir el mismo se le informó que era nuevo"*. ■

Determinó, además,

*"que habiéndose radicado [sic] el informe de la Conferencia con Antelación al Juicio, aparece que Braulio Agosto Motors, Inc. carece de prueba alguna para contradecir lo alegado por el demandante de que el vehículo nunca fue chocado por él, con la excepción de una declaración del presidente de dicha empresa, Sr. Braulio Agosto Vega de fecha de 18 de diciembre de 1997, en la que afirma que a él le consta dicho hecho. Esta afirmación no es suficiente para rebatir la prueba del demandante. Una persona que es la dueña de una empresa con gran volumen de ventas, no puede estar cinco meses, veinticuatro horas al día pendiente de un sólo vehículo. No decimos que el Sr. Agosto Vega miente, sino que el vehículo pudo haber sido chocado y arreglado sin que él tuviera conocimiento. Es claro e incontrovertido el hecho de que el vehículo en cuestión estuvo bajo el exclusivo control de Braulio Agosto Motors, Inc. desde que llegó a Puerto Rico el día 12 de noviembre de 1993 hasta la fecha de la venta al demandante, 11 de abril de 1994.*

*12. Es también un hecho claro e incontrovertido el que Braulio Agosto Motors, Inc, recibió el vehículo de manos de Gómez Hermanos, Inc. en perfectas condiciones el día 12 de noviembre de 1993.*

*13. La deposición del Sr. Federico Correa León, empleado de Gómez Hermanos Metro, y el informe preparado por el Sr. José A. Ramos, Instructor Técnico de Toyota de Puerto Rico, quien examinó el vehículo en presencia de los abogados de las partes el día 15 de agosto de 1995, demuestran sin lugar a dudas que el vehículo había sido chocado, que se le había cambiado el bonete, la pintura no era de fábrica, el marco del radiador había recibido un impacto y estaba doblado, y el marco de seguridad del abanico estaba roto. Fue por esa razón que Gómez Hermanos, Inc. le notificó al demandante que no honraría la garantía del vehículo cuando solamente tenía un millaje de 6,000 millas. Claramente se trata de un vicio oculto que hace el vehículo inservible para los propósitos para los cuales fue adquirido.*

*[...]"*. ■

Habiendo así determinado, emitió la sentencia aquí apelada adjudicando sumariamente la acción instada por los aquí demandantes, desmereciendo las alegaciones y declaración jurada sometida en oposición, para declarar con lugar la demanda en cuanto al co-demandado Braulio Agosto Motors, Inc. Condenó así a dicho demandado a satisfacer a la parte demandante la suma de dinero pagada por el vehículo, a saber, $13,750.00, intereses a razón

del 9.5% anual, las costas del proceso y $2,000.00 por concepto de honorarios de abogado.

De otra parte, desestimó la demanda instada en cuanto a los demás demandados, Gómez Hermanos, Inc. y Toyota de Puerto Rico Corp.

Resolvemos ahora que al acoger con aprobación la moción de sentencia sumaria promovida por los demandantes, sobre la oposición de los demandados, para adjudicar en trámite sumario y sin vista plenaria las controversias de hecho que venía obligado a dirimir como base para determinar la procedencia de la acción instada, incidió.

## II

Como es sabido, en nuestra jurisdicción las disposiciones que regulan la "*Sentencia dictada sumariamente*" están contenidas en la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36. Así, la Regla 36.3 autoriza que:

*"[l]a sentencia solicitada se dictará inmediatamente si las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. "*

De la citada disposición surge con meridiana claridad que no procede resolver un litigio mediante el mecanismo de sentencia sumaria cuando de los documentos que obran en autos resulta que hechos materiales, es decir, aquéllos que pueden afectar el resultado de la acción incoada, están en controversia. Es por ello que un tribunal no puede, en una moción de sentencia sumaria, juzgar cuestiones de hechos, y su autoridad se circunscribe a determinar si hay cuestiones que deben dilucidarse en juicio. *Sucn. Meléndez v. DACO*, 112 D.P.R. 86 (1982). Como bien se ha expresado, el propósito cardinal de dicha disposición es promover una solución justa, rápida y económica en aquellos pleitos en los que, por no estar envuelta una genuina controversia de hechos, se hace innecesaria la celebración de un juicio en su fondo. *González Pérez v. E.L.A.*, 138 D.P.R. ___ (1995), **95 J.TS. 52**; *González v. Alicea, Dir. Soc. Asist. Legal*, 132 D.P.R. 638, 645 (1993); *Rivera v. Superior Pkg. et al.*, 132 D.P.R. 115, 132-133 (1992); *Mercado Vega v. U.P.R.*, 128 D.P.R. 273, 281 (1991); *Camaleglo v. Dorado Wings, Inc.*, 118 D.P.R. 20 (1986); *Padín v. Rossi*, 100 D.P.R. 259, 263 (1971). Conforme a estos principios, en el análisis de determinar su procedencia, el juzgador habrá de discernir cuidadosamente al respecto pues, mal utilizada, la sentencia sumaria puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido procedimiento de ley. *Roig Com. Bank v. Rosario Cirino*, 126 D.P.R. 613, 617 (1990). Es por esta razón que el tribunal debe cerciorarse de la total inexistencia de controversias de hechos y que el residuo sea la aplicación del derecho. *Figueroa v. Hernández Torres*, 137 D.P.R. ___ (1994), **94 J.T.S. 134**; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538, 548 (1991).

En forma consecuente con el cuadro doctrinal antes expuesto, observamos que el Tribunal Supremo expresó en *Corp. Presiding Bishop*, a las págs. 722-723, que al considerar la procedencia de una sentencia sumaria, el tribunal interpelado debe analizar todos los documentos que acompañan ambas mociones, así como todos los que obren en el expediente, *Padín v. Rossi, supra*, págs. 263-264, y que no deberá dictarse una sentencia sumaria cuando existen hechos materiales controvertidos; cuando haya alegaciones afirmativas en la demanda que han sido refutadas, o cuando de los propios documentos que se acompañan con la moción surge una controversia real sobre algún hecho material, circunstancias todas que apuntan a que, como cuestión de derecho, no procede dictarse sentencia sumariamente. *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 722-723 (1986). Igual posición sostuvo en *PFZ Props. Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. ___ (1994), **94 J.T.S. 116**, pág. 125.

Resulta, pues, norma clara que la sentencia sumaria sólo procede cuando el tribunal tiene ante sí la verdad sobre todos los hechos pertinentes, *Tello Rivera v. Eastern Airlines,* 119 D.P.R. 83 (1987); *Padín v. Rossi, supra,* por lo que en tales casos, y por no existir una verdadera controversia de hechos entre las partes, la celebración del juicio en su fondo se hace innecesaria. *González Pérez v. E.L.A., supra; Flores v. Municipio de Caguas,* 114 D.P.R. 521 (1983); *Sucn. Meléndez v. DACO, supra.* Ello apunta a que, al enfrentar dudas en cuanto a la existencia de una controversia real, el tribunal debe resolver en contra de la parte que solicita la sentencia sumaria y a favor de un juicio vivo, *Roth v. Lugo, 87 D.P.R. 386 (1963); Valcourt Questell v. Tribunal Superior,* 89 D.P.R. 827 (1964), acercamiento cauteloso que indudablemente responde a que, en nuestro ordenamiento jurídico, una parte tiene derecho a un juicio plenario, ya sea cuando existe la más leve o mínima duda en cuanto a cuáles son los hechos en controversia, cuánto más cuando realmente existe un hecho en controversia. Cumple así el tribunal con su deber de analizar los hechos en la forma más favorable a la parte que se opone a que se dicte sentencia sumaria, *Méndez Arocho v. El Vocero de P.R.,* 130 D.P.R. 867 (1992), y de evitar la paradoja de convertir la sentencia sumaria en un mecanismo que, a la larga, causa dilación en los procedimientos cuando su concesión indebida resulta en una injusticia o en una revocación de la misma, *Roth v. Lugo, supra,* lo que a su vez, incide en la más pronta y eficiente resolución de la controversia.

Finalmente, el Tribunal Supremo ha sentenciado que no es aconsejable utilizar el mecanismo procesal de la sentencia sumaria en casos donde hay elementos subjetivos de intención, propósitos mentales o negligencia o cuando el factor credibilidad sea esencial. *Soto v. Hotel Caribe Hilton,* 137 D.P.R. ___ (1994), **94 J.T.S. 128,** pág. 311. (Énfasis nuestro).

Analicemos la situación particular que presentan los hechos que consideramos en el caso de epígrafe a la luz del precedente marco jurídico y jurisprudencial.

## III

Al emitir el foro de instancia la sentencia que es objeto del recurso que nos ocupa, observamos que de la documentación sometida afloraba la profunda controversia en cuanto a las respectivas teorías y contenciones relacionadas con el estado y condición en que el vehículo le fue entregado al demandante. En particular, la oposición de la aquí apelante Braulio Agosto Motors, Inc., fue apoyada en una declaración jurada del señor Braulio Agosto Vega. Mediante ésta se controvirtió y se puso en entredicho la afirmación del Sr. Santiago dirigida a establecer que su automóvil no sufrió impacto alguno mientras estuvo en su posesión. Aseveró así, el Sr. Agosto, bajo juramento, que *"el vehículo fue vendido y entregado ...en las mismas condiciones en que ... [se] recibió y durante el tiempo que dicho vehículo estuvo en el inventario de Braulio Agosto Motors, Inc. nunca fue chocado, ni impactado...".* Ello tuvo el efecto de levantar una genuina controversia de hechos que va a la esencia misma de la acción instada, a saber, cuándo fue que el vehículo recibió el impacto que anuló su garantía (por parte de Gómez Hermanos) y, a tenor, bajo la custodia de quién se encontraba el auto en esos momentos, para reclamar, y adjudicar, responsabilidad acorde. Es por ello, presumiblemente, y actuando conforme a derecho, que el foro de instancia había declinado previamente dos mociones de sentencia sumaria, optando por la celebración de un juicio vivo.

Al dirigir ahora nuestra atención al momento en que el Tribunal de Instancia, en ocasión de una *"Conferencia con Antelación a Juicio"*, la cual fue pautada para *"discutir el informe de pre-trial"*, determina reconsiderar su dictamen en cuanto a la moción de sentencia sumaria, ninguna prueba adicional o estipulación fue ofrecida para justificar la disposición sumaria del caso. En tales circunstancias, tal determinación errada no tuvo otro efecto que aquél de privar a los demandados del derecho que les asiste de tener la oportunidad de tener *"su día en corte"*, para en ella aportar prueba testifical en apoyo de su contención tendiente a demostrar que el impacto recibido por el vehículo objeto de controversia no fue recibido mientras el mismo estuvo bajo su custodia. Observamos así que, en su sentencia, el Tribunal de Instancia procede a hacer determinaciones de hechos en las cuales resulta obvio que entró a dirimir cuestiones de credibilidad, lo que queda ilustrado al

consignar las siguientes expresiones: *"[e]l demandante nunca ha chocado su vehículo desde que lo compró y que de ser cierto que el mismo era chocado se trata de vicios ocultos..."* (énfasis en el original); *"el demandante notificó al co-demandado Braulio Agosto Motors, Inc. los vicios ocultos en su vehículo de motor... y dicho co-demandado faltó a la verdad...afirmando que 'dicho vehículo se vendió y entregó acabado de llegar del muelle', cuando la verdad es que dicho vehículo estuvo bajo la posesión de éste durante cinco (5) meses antes de vendérselo al demandante";* y que *"lo alegado por el demandante de que el vehículo nunca fue chocado por él"* no puede ser contradicho por la declaración jurada del Sr. Agosto, ya que *"no es suficiente para rebatir la prueba del demandante. Una persona que es la dueña de un empresa con gran volumen de ventas, no puede estar cinco meses, veinticuatro horas al día pendiente de un sólo vehículo..."*. ■

Ciertamente, de la precedente exposición surge con meridiana claridad que incidió el tribunal de instancia al resolver en trámite sumario este asunto, o sea, quién en realidad tenía la custodia del auto al momento de ser chocado o impactado. Se trata de una *"controversia real [que] debe ser dilucidada en un juicio"*, Regla 36.3 de Procedimiento Civil, *supra*, por ser un hecho esencial cuya resolución incidía sobre el resultado de la acción incoada, extremo puesto en controversia por Braulio Agosto Motors. Regla 36.5 de Procedimiento Civil, *supra*, R. 36.5; *Tello, Rivera v. Eastern Airlines, supra*. En esas circunstancias, ante la genuina controversia sobre este hecho alegado por una y otra parte, el juzgador no podía entrar a juzgar tales cuestiones de hecho en trámite sumario, *Sucn. Meléndez v. DACO, supra*, por lo que venía obligado a resolver en contra de la parte promovente y a celebrar un juicio vivo, *Roth v. Lugo, supra; Valcourt Questell v. Tribunal Superior, supra*, ello con todas las garantías que el debido proceso de ley requiere. Resulta procedente, en consecuencia, emitir sentencia revocatoria de la apelada para reinstalar las alegaciones de las partes y ordenar la continuación del trámite procesal en forma armoniosa con lo aquí resuelto.

## IV

Por los fundamentos antes expuestos, se dicta sentencia revocando la apelada y se devuelve el caso al foro de instancia para la continuación de los procedimientos en forma armoniosa con lo aquí resuelto.

Lo acuerda y manda el Tribunal y así lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 154

1. Véase Minuta de 21 de agosto de 1998. Caso Civil Núm. 94-14338.

2. A raíz del fallecimiento del Sr. Santiago Rodríguez durante los procedimientos que se llevaron a cabo ante el Tribunal de Instancia, éste fue sustituido por los miembros de su sucesión testamentaria.

3. Ello constituyó base para que Gómez Hermanos, distribuidor de los autos Toyota en Puerto Rico, le notificara al demandante que no le honraría la garantía del auto, aun cuando éste tenía un millaje de tan sólo 6,000 millas y se encontraba dentro del período de garantía.

4. Véase Sentencia, Apéndice del recurso, págs. 22-23.

5. Véase Declaración jurada del Sr. Braulio Agosto Vega, Apéndice del alegato en oposición, págs. 10-11.

6. Véase Sentencia, Apéndice del recurso, págs. 22-23 y 25.

7. Los demás señalamientos imputan literalmente que:

*"1. Cometió error el tribunal de instancia al dejar sin efecto un pronunciamiento de NO HA LUGAR a una Moción de Sentencia Sumaria cuando ya la Resolución se había convertido en final y firme y el referido tribunal había perdido jurisdicción para variar el dictamen.*

*2. [...]*

*3. Cometió error el tribunal de instancia al determinar que el vehículo objeto de la acción es inservible para los propósitos para los cuales fue adquirido.*

*4. Cometió error el tribunal de instancia en la interpretación del derecho utilizado como guía para su decisión y en la interpretación de la jurisprudencia aplicada en su sentencia."*

Por entender que la consideración de los méritos del segundo error imputado al foro de instancia dispone del actual recurso, nos abstendremos de discutir los demás señalamientos.

**8.** Véase Sentencia, Apéndice del recurso, pág. 21.

**9.** Véase Minuta de 21 de agosto de 1998, Caso Civil Núm. 94-14338.

**10.** Véase Resolución de 12 de febrero de 1999.

**11.** Véase Notificación, Anejo A de la Moción Informativa de la apelante de 12 de abril de 1999.

**12.** Véase Demanda, Apéndice del recurso, pág. 57.

**13.** Véase Deposición del Sr. Antonio Santiago Rodríguez, Apéndice del recurso, págs. 32-33.

**14.** Véase Demanda, Apéndice del recurso, pág. 57.

**15.** Véase Demanda, Apéndice del recurso, pág. 58.

**16.** Surge así que la presentación de esta demanda respondió a la negativa que recibiera el Sr. Santiago, por parte de Braulio Agosto Motors, de su solicitud de que *"le cambiaran el automóvil por uno nuevo"*, lo que hizo mediante comunicación escrita cursada por su representación legal con fecha de 28 de octubre de 1994, y en la cual le relató el referido incidente. En su respuesta, de fecha del subsiguiente 7 de noviembre, el abogado de dicho concesionario le indicó al Sr. Santiago que el vehículo objeto de controversia nunca había estado *"envuelto en algún accidente antes de su entrega"*, *"que el mismo fue entregado completamente nuevo"*, y que dicho automóvil *"se vendió y entregó acabando de llegar del muelle"*. Véanse Cartas de 28 de octubre y de 7 de noviembre de 1994, Apéndice del alegato en oposición, págs. 92 y 93, respectivamente.

**17.** Véase Demanda, Apéndice del recurso, pág. 58.

**18.** *Id.*

**19.** Esta contención no fue atendida por el foro de instancia.

**20.** Véase Contestación a la demanda, Apéndice del recurso, pág. 103.

**21.** Véase Informe de Conferencia Preliminar entre Abogados, Apéndice del Alegato en Oposición, a la pág. 127.

**22.** *Id.*

**23.** Es interesante observar que, en esta carta, la representación legal del demandante le reclamó a Braulio Agosto Motors lo siguiente:

*"El Sr. Antonio Santiago Rodríguez compró el vehículo como nuevo y nunca lo ha chocado desde que lo compró. Por lo tanto resulta que ustedes vendieron el referido vehículo ya usado y reparado, y lo hicieron pasar por un auto nuevo, lo cual es un engaño.*

*Por la presente les solicito que en el término de cinco días le cambien el vehículo al Sr. Santiago por uno nuevo, ya que él no quiere más dicho vehículo, pues no es lo que él compró. El Sr. Santiago compró un vehículo nuevo por el precio de $13,750.00 pagado en efectivo con tres años de garantía y no un vehículo chocado y reparado sin garantía."*

**24.** Véase Moción de Sentencia Sumaria, Apéndice del recurso Núm. KLCE-96-00319, págs. 3-93, del cual tomamos conocimiento a petición de las partes.

**25.** Véase Sentencia, Recurso Núm. KLCE-96-00319, pág. 6.

**26.** Véase Declaración Jurada del Sr. Braulio Agosto Vega, Apéndice del alegato en oposición, pág. 11.

**27.** Véase Minuta de 21 de agosto de 1998, Caso Civil Núm. 94-14338.

**28.** Véase Sentencia, Determinación de Hecho Núm. 7, Apéndice del Recurso, pág. 22.

**29.** Véase Sentencia, Determinaciones de Hechos 11 a 13, Apéndice del recurso, págs. 22-23.

**30.** Véase Sentencia, Apéndice del recurso, págs. 22-23.